## TEMPLETON v. UNITED STATES.
### No. 10042.

Circuit Court of Appeals, Sixth Circuit.

Nov. 12, 1945.

W. A. Guild, of Nashville, Tenn., for appellant.

Z. T. Osborn, Jr., of Nashville, Tenn. (Horace Frierson, Jr., and Z. T. Osborn, Jr., both of Nashville, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Appellant was convicted upon three counts of an indictment which charged respectively, (1) that he had in his possession and under his control a still and distilling apparatus for the production of spirituous liquor without having given the required bond; (2) that he carried on the business of a distiller without having given bond; and (3) that he possessed whiskey intended for sale without the container having affixed thereto the required Internal Revenue tax stamps.

The Government's principal witness, Ernest Key, a deputy sheriff of Sumner County, Tenn., testified that at about 4 o'clock P. M. on November 17, 1944, he saw appellant and another man dismantling a still in the woods near Bethpage in that county; that he recognized appellant but did not know the other man; that each man picked up a keg and put it on his shoulder and walked toward the witness and when they saw him they dropped the kegs and ran away, and that he arrested appellant on the next day in Gallatin, Tenn.

It is undisputed that the kegs contained moonshine whiskey; that they had no revenue stamps thereon to indicate that the liquor tax had been paid, and that the still was unlicensed.

Appellant testified that he was not present at the time and place in question and that he had nothing to do with the operation of the still or ownership or possession of the whiskey. He further testified that at about 10:30 A. M. on November 17, 1944, he left Gallatin for the Vanderbilt Hospital in Nashville for the purpose of giving his grandmother, a patient there, a blood transfusion and remained there until about 4:30 o'clock on that day, when he returned to Gallatin, where he arrived at about 5:00 o'clock. He further testified that he rode to the hospital in Hawk Carter's automobile, accompanied by Dennis Carter, Mrs. Dennis Carter and Mrs. Anne Carter, and that he returned to Gallatin with these parties and his father, Grady Templeton. His testimony tending to show an alibi was corroborated by each of these parties.

Appellant's arrest in Gallatin occurred at the home of Hawk Carter, and over appellant's objection and exception, it was shown in evidence that he and the witnesses supporting his alibi were related to Hawk Carter by blood or affinity.

On his cross-examination, appellant was asked, over objection, "What kin are you to Hawk Carter of Gallatin, Tenn.?" and the answer was, "I am Hawk Carter's first cousin." Appellant was then asked, "Is that Hawk Carter the notorious bootlegger in Sumner County, Tenn.?" Over objection, appellant answered, "They say he is."

On cross-examination, Dennis Carter was asked: "What kin are you to Hawk Carter of Gallatin, Tenn.?" and over objection he answered, "I am Hawk Carter's brother."

On cross-examination Mrs. Anne Carter was asked, "What kin are you to Hawk Carter of Gallatin, Tenn.?" and over objection she answered, "I am Hawk Carter's mother."

On cross-examination Grady Templeton was asked, "What kin are you to Hawk Carter of Gallatin, Tenn.?" and over objection he answered, "I am Hawk Carter's uncle-in-law."

■ We think that the evidence adduced by the cross-examination of appellant and the witnesses supporting his alibi that they were related to Hawk Carter, "the notorious bootlegger of Sumner County" was not only inadmissible but prejudicial. The fact that appellant and his witnesses were related to Hawk Carter, a reputed bootlegger, was irrelevant not only

to the issues, but to the subject matter of their examination. Carter was not shown to have had any connection with the case. The sole purpose of this testimony was to degrade the witnesses in the minds of the jury. This is made clear by the closing argument of the district attorney in which he frequently mentioned Hawk Carter as "the notorious bootlegger of Sumner County"; and with reference to the relationship of appellant and his supporting witnesses to Hawk Carter, he quoted the saying, "Birds of a feather flock together" and stated that this relationship with the discrepancies in their testimony was a sufficient basis for the jury to disregard their evidence and convict appellant.

■ There are types of criminal cases in which the credibility of a defendant who becomes a witness for himself may be affected by requiring him to disclose on cross-examination the character of his associates and so in a similar manner may the testimony of his supporting witnesses be discredited. In such cases the testimony is relevant because the association is voluntary; but we are confronted here with no such case.

The following excerpt from Lee v. State, 66 Ark. 286, 50 S.W. 516, 517, is pointedly relevant:

"This mode of impeachment was improper, and the testimony elicited was inadmissible. Witnesses may be impeached by cross-examination as to their associations which affect their credibility, but such associations must be voluntary. They are not responsible, legally or morally, for the acts of their kin, with which acts they are in no wise connected. It does not follow that a witness is unworthy of belief because a relative has committed a felony. Worthy, credible witnesses may have felons for kindred."

See also Commonwealth v. Kosh, 305 Pa. 146, 160, 157 A. 479, wherein, on the cross-examination of a witness for the state, she was asked her parents' names and whether they were married when she was born. An objection to the question was sustained because it came clearly within the condemnation of the rule forbidding the impeachment of witnesses by matter calculated to humiliate and degrade.

■ Little need be said upon the question whether the improper evidence was prejudicial. The evidence of appellant's guilt was not so overwhelming as to ren-

der harmless the incompetent evidence complained of. Without any foundation in fact for showing such a connection, this testimony tended to connect appellant, who was charged with a violation of the liquor laws, with Carter, a reputed criminal of the same type. Had it not been admitted the defense of an alibi would have had a basis sufficient to justify the jury in returning a verdict of not guilty.

The judgment is reversed and the case remanded for a new trial.